BRADY ET AL., APPELLEES, *v.* CONSOLIDATED RAIL CORPORATION, APPELLANT, ET AL.

[Cite as Brady *v.* Consolidated Rail Corp. (1988), 35 Ohio St. 3d 161.]

(No. 87-387—Decided February 17, 1988.)

*Brown, Lippert & Heile, C. Donald Heile* and *Marquette D. Evans,* for appellees.

*Dinsmore & Shohl, Gary D. Bullock* and *Kathleen Fehr McClure,* for appellant.

HOLMES, J. In determining whether the trial court properly granted summary judgment to appellant Conrail below, we must first decide whether a police officer injured in the performance of his duties on a railroad right-of-way is a licensee or an invitee with respect to the railroad. In *Scheurer* v. *Trustees of the Open Bible Church* (1963), 175 Ohio St. 163, 23 O.O. 2d 453, 192 N.E. 2d 38, paragraph one of the syllabus, this court held that "[a] policeman entering upon privately owned premises in the performance of his official duty without an express or implied invitation enters under authority of law and is a licensee." However, for the reasons which follow, we hold that the liability of a landowner to a police officer who enters the land in the performance of his official duty, and suffers harm *due to a condition of a part of the land held open to the public,* is the same as the liability of the owner to an invitee.

Here, no material question of fact exists as to the location of the stray rail, as Conrail concedes that it was within the public right-of-way, and we thus affirm the court of appeals' reversal.

The policeman in *Scheurer* was injured when he fell into an open, unfenced excavation on the church's property one evening while investigating a radio call that the church was being burglarized. In holding the policeman to be a mere licensee, this court was guided by the fact that police officers, like firemen to whom the rule also extends, are likely to enter premises at unforeseeable times and venture into unlikely places, typically in emergency situations. Thus, the landowner cannot reasonably anticipate their presence nor prepare the premises for them, and the police officer must take the premises as the owner himself uses them. "Policemen and firemen come on the premises at any hour of the day or night and usually because of an emergency, and they go to parts of the premises where people ordinarily would not go. Their presence can not reasonably be anticipated by the owner, since there is no regularity as to their appearance and in most instances their appearance is highly improbable." *Scheurer, supra,* at 171, 23 O.O. 2d at 458, 192 N.E. 2d at 43. See, also, Prosser & Keeton, Law of Torts (5 Ed. 1984) 413, 431; Case Note, *Hubbard* v. *Boelt* [(1980), 28 Cal. 3d 480, 169 Cal. Rptr. 706, 620 P. 2d 156]: The Fireman's Rule Extended (1981), 9 Pepperdine L. Rev. 197, 198-201; Comment, Negligence Actions by Police Officers and Firefighters: A Need for a

Professional Rescuers Rule (1978), 66 Calif. L. Rev. 585, 589-593. The standard of care owed to a police officer in this position is necessarily limited, and "* * * there is no liability, where the owner of the premises was not guilty of any willful or wanton misconduct or affirmative act of negligence; there was no hidden trap or violation of a duty prescribed by statute or ordinance (for the benefit of the policeman) concerning the condition of the premises; and the owner did not know of the policeman's presence on the premises and had no opportunity to warn him of the danger." *Scheurer, supra,* at paragraph two of the syllabus.

However, where a policeman enters into an area of the landowner's property which is held open for the use of the general public, where it is reasonable for the landowner to expect police presence and prepare for it, the police officer stands in the same position as others being an invitee, albeit implied, toward whom the landowner must exercise ordinary care. This logical exception to the "Fireman's Rule" has been adopted in a few of our sister jurisdictions[1] and is embodied in Section 345(2) of 2 Restatement of the Law 2d, Torts (1965) 227, as follows:

"The liability of a possessor of land to a public officer or employee who enters the land in the performance of his public duty, and suffers harm because of a condition of a part of the land held open to the public, is the same as the liability to an invitee."

The implied invitation to the public to enter onto private premises, be it by an entryway, an alley, or a right-of-

---

[1] See, *e.g., Mile High Fence Co.* v. *Radovich* (1971), 175 Colo. 537, 489 P. 2d 308; *Ryan* v. *Chicago & N.W. RR. Co.* (1942), 315 Ill. App. 65, 42 N.E. 2d 128; *Fancil* v. *Q.S.E. Foods, Inc.* (1975), 60 Ill. 2d 552, 328 N.E. 2d 538; *Nared* v. *School Dist. of Omaha* (1974), 191 Neb. 376, 215 N.W. 2d 115; *Caroff* v. *Liberty Lumber Co.* (1977), 146 N.J. Super. 353, 369 A. 2d 983; *Meiers* v. *Fred Koch Brewery* (1920), 229 N.Y. 10, 127 N.E. 491; Annotation (1984), 30 A.L.R. 4th 81; *Prosser & Keeton, supra,* at 432, fn. 52.

way, permits members of the public to reasonably assume that ordinary, reasonable care has been used to make the land safe for their reception. See Section 345 of the Restatement of Torts, *supra,* at 229, Comment *e.*

The parties herein do not dispute that Officer Brady was injured on property owned by Conrail and, specifically, that he was injured in the area where the railroad right-of-way intersects what would have been the public sidewalk. "Ordinarily, the duty to keep streets, including sidewalks, open, in repair and free from nuisance rests upon a municipality and not upon the abutting owners." *Eichorn* v. *Lustig's, Inc.* (1954), 161 Ohio St. 11, 13, 52 O.O. 467, 468, 117 N.E. 2d 436, 437. However, railroad companies are given such duty of care where, as here, their tracks intersect a public way, pursuant to R.C. 4955.20, which provides:

"Companies operating a railroad in this state shall build and keep in repair good and sufficient crossings over or approaches to such railroad, its tracks, sidetracks, and switches, at all points where any public highway, street, lane, avenue, alley, road, or pike is intersected by such railroad, its tracks, sidetracks, or switches. Such companies shall build and keep in repair good and sufficient sidewalks on both sides of streets intersected by their railroads, the full width of the right-of-way owned, claimed, or occupied by them. * * *

"* * * Such crossings, approaches, and sidewalks shall be constructed, repaired, and maintained by the railroad companies as so ordered."

R.C. 4955.20 imposes general requirements on railroads to keep all rights-of-way safe and in good repair for the benefit of the general public using such crossings, "and negligence is the basis of liability thereunder," *Porter* v. *Toledo Terminal RR. Co.* (1950), 152 Ohio St. 463, 40 O.O. 485, 90 N.E. 2d 142, paragraph two of the syllabus (construing analogous former G.C. 8843 and 8914). This would be so even though any improvement to such crossing, approach or sidewalk had not been ordered by a township or municipality according to this section of law. Thus, a railroad company may be liable for negligence to a police officer, or any other invitee, who enters upon such company's public right-of-way and is injured due to the company's failure to build and keep in good repair such right-of-way.

We find no persuasive reason to hold defendant railroad company to a lesser standard of care with respect to police officers than that which they owe to the general public. Therefore, we must remand the cause for further proceedings consistent with our determination that since Officer Brady was injured within the railroad right-of-way, he was an implied invitee.

The trial court erred in granting summary judgment to Conrail, and the judgment of the court of appeals, as modified herein, is hereby affirmed.

*Judgment affirmed.*

MOYER, C.J., SWEENEY, LOCHER, DOUGLAS, WRIGHT and H. BROWN, JJ., concur.