[This opinion has been published in *Ohio Official Reports* at 74 Ohio St.3d 362.]

HACK ET AL., APPELLANTS, *v*. GILLESPIE, APPELLEE, ET AL.

[Cite as *Hack v. Gillespie*, 1996-Ohio-167.]

*Torts—Negligence—Real property—Owner or occupier of private property can be liable to a fire fighter or police officer who enters premises and is injured in the performance of his or her official job duties, when.*

_____

An owner or occupier of private property can be liable to a fire fighter or police officer who enters premises and is injured in the performance of his or her official job duties if (1) the injury was caused by the owner's or occupier's willful or wanton misconduct or affirmative act of negligence; (2) the injury was a result of a hidden trap on the premises; (3) the injury was caused by the owner's or occupier's violation of a duty imposed by statute or ordinance enacted for the benefit of fire fighters or police officers; or (4) the owner or occupier was aware of the fire fighter's or police officer's presence on the premises, but failed to warn them of any known, hidden danger thereon. (*Scheurer v. Trustees of Open Bible Church* [1963]*, 175 Ohio St. 163, 23 O.O.2d 453, 192 N.E.2d 38, paragraph two of the syllabus, followed.)

_____

(No. 94-1780—Submitted November 8, 1995—Decided January 24, 1996.)

APPEAL from the Court of Appeals for Cuyahoga County, No. 65673.

_____

{¶ 1} Appellant Stephen Hack was a fire fighter for the city of Lakewood, Ohio. On March 1, 1989, Hack responded to a fire at 1589 Larchmont Avenue. He gained access to the residence by entering a porch located on the second floor. While on the porch, Hack leaned over a decorative railing to retrieve some

equipment. The railing, however, gave way, causing Hack to fall to the ground. As a result, Hack suffered a broken hip and elbow.

{¶ 2} At the time of the fire, it appears that there were no occupants in the house. On December 2, 1988, the owner of the premises, Kevin Gillespie, appellee, had entered into an agreement with Patrick T. Cullen and Thom Rodgers III, whereby Cullen and Rodgers were given an option to purchase the property. It appears that Cullen and Rodgers entered into the agreement for the purpose of renovating the residence and, pursuant to the agreement, they were to have exclusive possession and control of the premises for the term of the option. However, Gillespie remained the owner of the premises. He retained a key to the house and, additionally, furniture and other items apparently owned by Gillespie were kept on the premises.

{¶ 3} Following the accident, Jack L. Henderson, Fire Marshal for the Lakewood Fire Department, investigated the cause of Hack's fall. Henderson determined that the railing on the porch had not been properly secured to the roof of the house. Henderson informed the city building inspector about the railing and, according to Henderson, the inspector cited Gillespie for violating the Lakewood Building Code.

{¶ 4} On October 13, 1992, Hack and his wife, Melanie Hack, also an appellant herein, filed suit against Gillespie, Cullen, and Rodgers. In the complaint, which included Melanie's claim for loss of services and consortium, appellants sought damages against the defendants for constructing and/or maintaining the railing in a defective condition, for failing to warn Hack of the loose railing, and for violating the building code.

{¶ 5} Thereafter, Gillespie filed a motion for summary judgment. In his affidavit in support of his motion, Gillespie testified that he had not been aware of the condition of the railing, that he had not installed it, and that from winter 1978 until Cullen and Rodgers retained possession and control of the premises, the doors

leading from inside the house to the porch from which Hack fell had been nailed shut and plastic sheeting had been secured over the inside of the doorways.

{¶ 6} Cullen and Rodgers also moved for summary judgment. In their motion, Cullen and Rodgers claimed that they were not at the residence at the time of the fire, that they were not aware of the alleged defective condition of the decorative railing, and that the porch where Hack fell had been used infrequently or not at all.

{¶ 7} On May 19, 1993, the trial court granted the defendants' motions for summary judgment. Specifically, the trial court stated that its decision was based on the reasoning and holdings in *Herdman v. Weiss* (1988), 55 Ohio App.3d 150, 563 N.E.2d 40, and *Scheurer v. Trustees of Open Bible Church* (1963), 175 Ohio St. 163, 23 O.O.2d 453, 192 N.E.2d 38.

{¶ 8} On appeal, the Court of Appeals for Cuyahoga County affirmed the judgment of the trial court. The court of appeals, also relying on *Scheurer* and *Herdman*, *supra*, held (1) that the porch railing was not a hidden trap, (2) that Gillespie, Cullen, and Rodgers were not aware of Hack's presence on the premises and did not have the opportunity to warn him, (3) that there was no evidence of any willful or wanton misconduct or affirmative act of negligence on the part of Gillespie, Cullen or Rodgers, and (4) that Lakewood Building Code 1305.29(e), providing that porches be constructed and maintained in a safe condition, was not "intended to include firefighters in the class of protected individuals when it prescribed the safe installation and ongoing maintenance of residential appurtenances."

{¶ 9} The cause is now before this court pursuant to the allowance of a discretionary appeal.[1]

_____

1. Gillespie is the only appearing appellee in this case.

*Donald E. Caravona & Associates* and *Mark J. Obral*, for appellants.

*Rhoa, Follen & Rawlin Co., L.P.A*., and *Ronald V. Rawlin*, for appellee.

*Scanlon & Henretta Co., L.P.A*., *Lawrence J. Scanlon* and *Ann Marie O'Brien*, urging reversal for *amicus curiae,* Ohio Academy of Trial Lawyers.

*Joseph W. Diemert, Jr. & Associates Co., L.P.A*., *Joseph W. Diemert, Jr.* and *Bradric T. Bryan*, urging reversal for *amicus curiae,* the Northern Ohio Fire Fighters Association.

*Arter & Hadden* and *Kristen L. Mayer*, urging affirmance for *amicus curiae,* Ohio Association of Civil Trial Attorneys.

_____

**DOUGLAS, J.**

{¶ 10} The issue presented for our consideration concerns the liability of an owner of private property to a fire fighter who enters the premises and, while performing his official duties, suffers harm as a result of the condition of the premises. Specifically, we are asked to reexamine the rule in Ohio regarding a landowner's liability to police officers and fire fighters, set forth in *Scheurer, supra*, and generally referred to as Ohio's "Fireman's Rule."

{¶ 11} The term "Fireman's Rule," which is used to include fire fighters and police officers, refers to a common-law doctrine originally formulated in *Gibson v. Leonard* (1892), 143 Ill. 182, 32 N.E. 182. See Strauss, Where There's Smoke, There's The Firefighter's Rule: Containing The Conflagration After One Hundred Years 1992 Wis.L.Rev. 2031. *Gibson* classified fire fighters as licensees entering upon property for their own purposes and with the consent of the property owner or occupant.[2] *Id*. at 2034. Thus, the landowner or occupant owed no duty

---

2. *Gibson v. Leonard* (1892), 143 Ill. 182, 32 N.E. 182, is no longer the law in Illinois. In *Dini v. Naiditch* (1960), 20 Ill.2d 406, 416, 170 N.E.2d 881, 885, the Illinois Supreme Court determined that "the common-law rule labelling firemen as licensees is but an illogical anachronism, originating in a vastly different social order, and pock-marked by judicial refinements, it should not be

to the fire fighter unless the fire fighter's injury was caused by the owner's or occupier's willful or wanton misconduct. *Id*. at 2031, fn. 2.

{¶ 12} The rule was originally created to apply to fire fighters, but it has evolved and has been extended to include police officers. *Id*. at 2032. See, also, *Brady v. Consol. Rail Corp*. (1988), 35 Ohio St.3d 161, 163, 519 N.E.2d 387, 388-389, citing *Scheurer*, *supra*. It appears that a vast majority of our sister states have adopted or have retained some form of the Fireman's Rule. The rule, however, is by no means a uniform rule. Rather, those jurisdictions which have adopted or retained some vestige of the rule have done so by applying various legal theories and principles, resulting in several different versions. See, generally, Strauss, *supra*, 1992 Wis.L.Rev. 2031. See, also, *Pottebaum v. Hinds* (Iowa 1984), 347 N.W.2d 642, 643; and *Calvert v. Garvey Elevators, Inc*. (1985), 236 Kan. 570, 572, 694 P.2d 433, 436.

{¶ 13} The rule in Ohio, like many of our sister jurisdictions, contains exceptions to the "no duty" approach as originally established in *Gibson, supra*. In *Scheurer*, *supra*, paragraphs one and two of the syllabus, this court held:

"1. A policeman entering upon privately owned premises in the performance of his official duty without an express or implied invitation enters under authority of law and is a licensee.

"2. Where a policeman enters upon private premises in the performance of his official duties under authority of law and is injured, there is no liability, where the owner of the premises was not guilty of any willful or wanton misconduct or affirmative act of negligence; there was no hidden trap or violation of a duty prescribed by statute or ordinance (for the benefit of the policeman) concerning the

---

perpetuated in the name of 'stare decisis.'" See, also, Stern, Firemen's Recovery from Negligent Landowners (1967), 16 Cleve. Mar.L.Rev. 231, 248.

condition of the premises; and the owner did not know of the policeman's presence on the premises and had no opportunity to warn him of the danger."

{¶ 14} In the case at bar, appellants ask this court to reexamine and, specifically, overrule *Scheurer* and hold that a landowner owes a duty of reasonable care, in all instances, to fire fighters who enter upon the private premises in the exercise of their official duties. In this regard, appellants suggest that fire fighters who enter upon private premises should be classified as invitees and, accordingly, may recover for personal injuries suffered as a result of the possessor's ordinary acts of negligence. Alternatively, appellants contend that *Scheurer* should be limited so that a fire fighter can recover against a negligent landowner where, as here, the dangerous condition that caused the injury was in no way associated with the emergency to which the fire fighter responded.

{¶ 15} The contentions posed by appellants, however, miss the fundamental purpose upon which the holding in *Scheurer* is based. We concede that this court has, previously, determined that the duty of care owed by a landowner to a fire fighter (or police officer) stems from common-law entrant classifications, *i.e.,* licensees or invitees.[3] However, Ohio's Fireman's Rule is more *properly* grounded on policy considerations, not artificially imputed common-law entrant classifications. Indeed, persons such as fire fighters or police officers who enter land pursuant to a legal privilege or in the performance of their public duty do not fit neatly, if ever, into common-law entrant classifications.[4] See, *e.g.*, Note, Equal

---

3. In *Brady v. Consol. Rail Corp*. (1988), 35 Ohio St.3d 161, 519 N.E.2d 387, we held that the Fireman's Rule does not encompass injuries to police officers and fire fighters in areas that are held open to the general public. Police officers and fire fighters who are injured in areas held open to the general public are, according to *Brady*, classified as invitees and not licensees. *Id*., paragraph one of the syllabus. The accident in the case at bar did not occur in an area that was "held open to the public." Thus, *Brady* is not applicable to the situation here. Further, although we perpetuated common-law entrant classifications in *Brady*, we decline, at this juncture, to comment on the propriety of classifying the police officer in that case as an invitee.

4. For a scholarly discussion contrasting the various common-law entrant classifications, see Ferrell, Emerging Trends in Premises Liability Law: Ohio's Latest Modification Continues to Chip Away at Bedrock Principles (1995), 21 Ohio N.U.L.Rev. 1121.

Protection and the Fireman's Rule in Ohio (1987-1988), 38 Case W.Res.L.Rev. 123, 124 ("Because firemen and policemen acquire the right to enter property by virtue of authority granted by the state, they ought to fall between the classifications of licensee and invitee."); Strauss, *supra*, 1992 Wis.L.Rev. at 2034-2035; *Pearson v. Canada Contracting Co., Inc.* (1986), 232 Va. 177, 183, 349 S.E.2d 106, 110 ("Policemen and firemen, however, do not fit into any of these categories; they enter premises as of right, under a privilege based on a public purpose. They clearly are not trespassers. Nor can they be classified as licensees or invitees, who enter with consent or invitation of the occupant, as consent and invitation are irrelevant to a policeman's or fireman's privileged entry."); and *Buren v. Midwest Industries, Inc.* (Ky. 1964), 380 S.W.2d 96, 98.

{¶ 16} In *Scheurer*, *supra*, a police officer responded to investigate that "kids" were attempting to break into a church. After arriving at the church, the officer proceeded, on foot, down the church's driveway toward the church's side entrance. While proceeding down the driveway in absolute darkness, the officer fell into a large unguarded excavation site, sustaining serious injuries. The side entrance light of the church was not working and there was nothing in the area to alert the officer to the excavation. In determining that the injured police officer could not recover against the church, we concluded that:

"Policemen and firemen come on the premises at any hour of the day or night and usually because of an emergency, and they go to parts of the premises where people ordinarily would not go. Their presence can not reasonably be anticipated by the owner, since there is no regularity as to their appearance and in most instances their appearance is highly improbable.

"Reasoning and experience support *the public policy* that the duty of an owner of private premises toward policemen and firemen who come upon his premises by authority of law in the performance of their official duties and suffer injury should be only that duty owed to a licensee, and that the owner should only

be liable where such injury is inflicted by willful or wanton misconduct, or an active act of negligence, or by a violation of a duty created by statute or ordinance (for the benefit of policemen or firemen), or where a hidden trap caused the injury or where the owner had knowledge of the presence of the policeman or fireman on the premises and the opportunity to warn him of the danger and failed to do so." (Emphasis added.) *Id*., 175 Ohio St. at 171-172, 23 O.O.2d at 458, 192 N.E.2d at 43.

{¶ 17} As can be gleaned, this court's holding in *Scheurer* is based on certain legal theories and various public policy concerns. First, fire fighters and police officers can enter the premises of a private property owner or occupant under authority of law. Hence, fire fighters and police officers can be distinguished from ordinary invitees. *Id*., 175 Ohio St. at 168-169, 23 O.O.2d at 456, 192 N.E.2d at 41-42. Second, because a landowner or occupier can rarely anticipate the presence of safety officers on the premises, the burdens placed on possessors of property would be too great if fire fighters and police officers were classified, in all instances, as invitees to whom a duty of reasonable care was owed. *Id*., 175 Ohio St. at 170, 23 O.O.2d at 457-458, 192 N.E.2d at 43. Third, the rule has been deemed to be justified based on a cost-spreading rationale through Ohio's workers' compensation laws. In this regard, this court has recognized that all citizens share the benefits provided by fire fighters and police officers and, therefore, citizens should also share the burden if a fire fighter or police officer is injured on the job. *Id*., 175 Ohio St. at 170-171, 23 O.O.2d at 457, 192 N.E.2d at 43.

{¶ 18} We believe that many of the reasons supporting the rule in *Scheurer* are well founded and are still sound and valid in our society today. Fire fighters and police officers assume risks by the very nature of their chosen profession. The risks encountered are not always directly connected with arresting criminals or fighting fires. Members of our safety forces are trained to expect the unexpected. Such is the nature of their business.

**{¶ 19}** The risks they encounter are of various types. A fire fighter, fighting a fire, might be attacked by the family dog. He or she might slip on an object in the middle of a yard or on a living room floor. An unguarded excavation may lie on the other side of a closed doorway, or the fire fighter might be required to climb upon a roof not realizing that it has been weakened by a fire in the attic. Fortunately, Ohio has statutory compensation schemes which can temper the admittedly harsh reality if one of our public servants is injured in the line of duty.

**{¶ 20}** Further, appellants argue that fire fighters and police officers are treated unfairly in Ohio because they are not entitled to the same protection as other individuals/employees who enter a landowner's or occupier's premises.[5] However, unlike water, electric and gas meter readers, postal workers and others, fire fighters can enter a homeowner's or occupier's premises at any time, day or night. They respond to emergencies, and emergencies are virtually impossible to predict. They enter locations where entry could not be reasonably anticipated, and fire fighters often enter premises when the owner or occupier is not present. We believe that under these circumstances abrogation of Ohio's Fireman's Rule, as suggested by appellants, would impose too great a burden on Ohio landowners and occupiers and their insurers.

**{¶ 21}** Moreover, *Scheurer* does not stand for the proposition that a possessor of land owes *no duty* to a fire fighter or police officer. Rather, this court in *Scheurer* has cogently set forth several exceptions to the "no duty" rule.

**{¶ 22}** We are aware that a few jurisdictions have abolished or modified their original rule. See, *e.g.*, *Mounsey v. Ellard* (1973), 363 Mass. 693, 297 N.E.2d 43; *Dini v. Naiditch* (1960), 20 Ill.2d 406, 170 N.E.2d 881; and *Christensen v. Murphy* (1984), 296 Ore. 610, 678 P.2d 1210. We are also cognizant that the

---

5. Appellants and *amicus* Ohio Academy of Trial Lawyers also raise a number of constitutional challenges to Ohio's Fireman's Rule. However, these issues were not raised in the trial court and, accordingly, have been waived. In any event, appellants' contentions lack merit.

Fireman's Rule has been the subject of considerable commentary. See, *e.g*., Annotation, Liability of Owner or Occupant of Premises to Fireman Coming Thereon in Discharge of His Duty (1982), 11 A.L.R.4d 597, 601-602; Prosser & Keeton, Law of Torts (5 Ed. 1984) 430-432, Section 61; Strauss, *supra*, 1992 Wis.L.Rev. 2031; Note, *supra*, 38 Case W.Res.L.Rev. 123; Stern, Firemen's Recovery from Negligent Landowners (1967), 16 Cleve. Mar.L.Rev. 231; Riley, The Fireman's Rule: Defining its Scope Using the Cost-Spreading Rationale (1983), 71 Cal.L.Rev. 218; and Note, Assumption of the Risk and the Fireman's Rule (1981), 7 Wm. MitchellL.Rev. 749. However, we believe that the principles set forth in *Scheurer, supra,* strike an appropriate balance between the interests of a possessor of land and the right of a fire fighter or police officer to avoid exposure to unlimited or unreasonable risks of injury.

{¶ 23} Accordingly, we hold that an owner or occupier of private property can be liable to a fire fighter or police officer who enters premises and is injured in the performance of his or her official job duties if (1) the injury was caused by the owner's or occupier's willful or wanton misconduct or affirmative act of negligence; (2) the injury was the result of a hidden trap on the premises; (3) the injury was caused by the owner's or occupier's violation of a duty imposed by statute or ordinance enacted for the benefit of fire fighters or police officers; or (4) the owner or occupier was aware of the fire fighter's or police officer's presence on the premises, but failed to warn them of any known, hidden danger thereon.

{¶ 24} Applying these principles, we find that summary judgment was properly granted in favor of Gillespie. The court of appeals held, and we agree, that the record does not contain any evidence of willful or wanton misconduct or affirmative act of negligence on the part of Gillespie. Moreover, there is no evidence in the record supporting appellants' allegation that the unsecured railing was a hidden trap. Further, even assuming that Gillespie had actual knowledge of the condition of the railing, Gillespie apparently was not at the residence at the time

of the fire and was not aware of Hack's presence on the premises and, thus, did not breach a duty to warn Hack of the loose railing.

{¶ 25} In addition, we also agree with the court of appeals that appellants have failed to show that Lakewood Building Code 1305.29(e) was intended to include fire fighters "in the class of protected individuals when it prescribed the safe installation and ongoing maintenance of residential appurtenances." Section 1305.29(e) provides that:

"No owner, operator or agent shall occupy, maintain or lease or offer for rental or lease any dwelling or dwelling unit or any part thereof which does not comply with the following minimum requirements:

"* * *

"(e) Every inside and outside stair and every porch and every appurtenance thereto shall be so constructed as to be safe to use and capable of supporting the load that normal use may cause to be placed thereon and shall be maintained in sound condition and good repair."

{¶ 26} Clearly, the ordinance at issue was designed for the protection of the general public and was not enacted specifically for the benefit of fire fighters or police officers. Section 1305.29(e) is only incidentally beneficial to fire fighters or police officers. See, generally, *Held v. Rocky River* (1986), 34 Ohio App.3d 35, 37, 516 N.E.2d 1272, 1275.

{¶ 27} Based on the foregoing, we hold that summary judgment was properly granted in favor of Gillespie. We affirm the judgment of the court of appeals.

*Judgment affirmed.*

MOYER, C.J., WRIGHT, RESNICK, PFEIFER and COOK, JJ., concur.

F.E. SWEENEY, not participating.

_____